966 So.2d 1055 (2007)
Charlie WEEDON
v.
BERRY CONTRACTING.
No. 07-CA-190.
Court of Appeal of Louisiana, Fifth Circuit.
August 28, 2007.
*1056 Brian G. Shearman, John H. Denenea, Jr., Attorneys at Law, New Orleans, Louisiana, for Plaintiff/Appellee.
Robert E. Kerrigan, Jr., Jonathan M. Walsh, Attorneys at Law, New Orleans, Louisiana for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, GREG G. GUIDRY, and JAMES C. GULOTTA, Pro Tempore.
JAMES C. GULOTTA, Judge Pro Tempore.
In this workers' compensation case defendant, Berry Contracting, appeals from the granting of a default judgment awarding plaintiff, Charlie Weeden, temporary total disability benefits, penalties and attorney's fees.
The error complained of is that the trial judge erroneously admitted uncertified medical records in the default judgment hearing. According to defendant, because uncertified medical records are not admissible, plaintiff failed to prove, in the confirmation of the default hearing, a prima facie case. Defendant claims R.S. 23:1316.1(C) requires that medical evidence shall include "oral testimony or certified medical records from all treating and all examining health care providers." It is defendant's contention that four of the seven medical exhibits admitted into evidence were not certified. Defendant argues that plaintiff failed to establish that he was entitled to benefits because the medical records were contradictory regarding his ability to return to work and because plaintiff, the only witness to testify at the confirmation hearing, did not testify that he was disabled or that he could not work.
According to defendant, while the trial judge did not in his judgment use the words "temporary total disability," the judge awarded benefits to the extent of 2/3 of claimant's average weekly wage of $750, which amounts to a temporary total disability award. Defendant further complains of a $4,000 award in penalties and an $8,000 attorney's fees award.
Plaintiff, on the other hand, claims that the workers' compensation judge did not manifestly err. Plaintiff contends that his testimony and the three certified medical records admitted were sufficient to meet his burden in this case.
At the hearing, plaintiff testified that he sustained injuries as a result of a tool box falling from a scaffold and striking him on the head and shoulder on May 25, 2004, while employed at Berry Contracting Company. According to plaintiff he was sent to the defendant's doctor, Dr. Serio, who then referred plaintiff to an orthopedic specialist, Dr. Earl Rozas.
While treated by Dr. Rozas, plaintiff underwent two (2) epidural steroid injections. He was further treated by a Dr. D.C. Mohnot at the New Orleans headache clinic. He was also, according to plaintiff, under the medical care of Dr. Jamison of the Advanced Medical Clinic on Jefferson Highway. Plaintiff claims that the certified medical records of Dr. Rozas state that plaintiff, as of January 24, 2005 is "still not allowed to return to work."
At the time of the hearing, plaintiff testified, on August 8, 2006, he was still under the care of Dr. Rebecca Jameson for the injuries as a result of the May 25, 2004 accident. Plaintiff testified workers' compensation had not paid any of his medical expenses. Plaintiff testified further that *1057 he had not worked for his employer since September 26, 2004. His attorney stated that he stopped working on the instruction of Dr. Rozas. His attorney further stated that plaintiff was disabled from that time until the time of the hearing and had not been released to return to work. Additionally, plaintiff's attorney stated that at the time of the injury, plaintiff's average weekly wage was $750.00 per week.
In connection with the penalty award, plaintiff claims that Berry Contracting Company did not pay any indemnity benefits, paid very little medical benefits during the pendency of the claim, and made no appearance despite having been notified of a preliminary default having been taken.
According to plaintiff, the award was properly made based on the certified medical evidence and the failure of the defendant to pay benefits.
LAW
The first issue presented by defendant is whether plaintiff met his burden of establishing a prima facie case where no oral medical testimony was offered and where only some medical records were certified. La. R.S. 23:1316.1(C) provides in pertinent part:
C. Medical evidence shall include oral testimony or certified medical records from all treating and all examining health care providers . . .
In Davis v. Petroleum Club of Lafayette, 01-0142 (La.App. 3 Cir. 9/19/01), 795 So.2d 506, the Third Circuit affirmed a default judgment, even though uncertified and unsworn medical records of a claimant's treating physician were admitted. The Third Circuit stated that a relaxed evidentiary standard was applicable in workers' compensation cases. The Louisiana Supreme Court granted writs and reversed in Davis v. Petroleum Club of Lafayette, 01-2818 (La.1/11/02), 806 So.2d 654, stating in pertinent part:
Because Wilson Joseph Davis, Sr. has not complied with the requirement of La. Rev.Stat. Ann. Sec. 23:1316.1 in presenting statutorily sufficient medical evidence, we set aside the judgment of the hearing officer and remand this matter to the hearing officer for further proceedings.
. . .
The Supreme Court in Davis cited Nickens v. Patriot Home Systems, 97-0291 (La. App. 1 Cir. 6/29/98), 713 So.2d 1179, set aside the confirmation judgment and remanded the matter to the commissioner for further proceedings.
In the Nickens case, cited by the Supreme Court, the First Circuit held that medical evidence in a workers' compensation case was insufficient to support a judgment against an employer where the medical evidence was neither oral testimony from the treating physician nor was it in the form of a sworn narrative report. The First Circuit in Nickens stated that there is no entitlement to a default judgment absent strict compliance with procedural requirements. Id. at 1182.
An interesting argument is raised by defendant in connection with the interpretation of R.S. 23:1316.1. According to defendant, because the statute provides that medical evidence shall include oral testimony or certified medical records from all treating and all examining health care providers, any attempt to introduce or to consider only those records that are certified, does not comport with the wording of the statute. It is defendant's contention that it is necessary, under the statute, that all medical records from all treating and examining healthcare providers must be certified and if not, no uncertified medical records are admissible. Defendant further claims that, because all of the medical *1058 records were not certified, none of the medical evidence is admissible, whether certified or not.
We do not address defendant's argument in the instant case, because even if we considered only the certified records, plaintiff has failed to establish a prima facie case to support the trial court's finding of an award commensurate with temporary total disability. Therefore we need not consider the interpretation of R.S. 23:1316.1(C) as advanced by defendant.
EVIDENCE
In the instant case, no oral testimony of a physician was offered by plaintiff in the confirmation hearing. Three of the medical records were certified, while four were not. Pretermitting the defendant's first argument, we consider only those three certified records.
Certified records from Dr. Earl Rozas at the Bone & Joint Clinic indicated that plaintiff was examined by Dr. Rozas on August 13, 2004 for complaints of pain in the right neck/shoulder area. The physical exam showed pain on movement. The x-rays of the shoulder were normal but the x-ray of the neck showed pathology at C6-C7. An EMG of the right arm performed September 1, 2004 was normal.[1] An MRI performed on September 22, 2004 showed multilevel pathology in the C-spine at 3-4, 5-6 and 6-7 levels. A report from Dr. Rozas dated September 29, 2004 states the degenerative disc disease pre-existed the injury but the injury aggravated the pre-existing condition. There are return to work slips dated August 18, 2004 and August 25, 2004, releasing plaintiff to return to regular work with restrictions on lifting and a September 29, 2004 slip releasing plaintiff to return to light work with restriction of no lifting or pulling in excess of 25 pounds. These records indicate that plaintiff additionally visited Dr. Rozas on October 27, 2004, January 24, 2005, and June 5, 2006. There is a handwritten notation which is dated January 24, 2005, stating "still not allowed to return to work." Numerous prescriptions for Lortab and Soma were prescribed in during this time period.
Records from the Same Day Surgery Center, where cervical epidural steroid injections were performed on October 12, 2004 and November 12, 2004 reflect plaintiff was diagnosed with cervical foraminal stenosis with radiculopathy.
When we consider the certified records, these are not sufficient to support the judgment. The most recently dated return to work slip, dated September 29, 2004, states plaintiff may return to work with restrictions. The January 24, 2005 handwritten notation in Dr. Rozas' records vaguely states, "still not allowed to return to work." This notation can be interpreted in a number of ways and does not convince us that Dr. Rozas had instructed plaintiff not return to work. First, this handwritten notation is inconsistent with the return to work slips releasing plaintiff to work with restrictions on lifting and to return to light work with restriction of no lifting or pulling in excess of 25 pounds. Further, Dr. Rozas' records reflect that, on previous occasions, he wrote plaintiff's instructions regarding his work status on a separate return to work slip. There is no separate slip from Dr. Rozas indicating that plaintiff was not allowed to return to work to correspond with this vague notation in the medical records. Accordingly, we do not find anything in the records to show that plaintiff was disabled and/or that Dr. Rozas recommended that plaintiff stop working.
*1059 Regardless of whether we consider none of the records offered by plaintiff, as suggested by defendant or whether we consider just the certified records offered in the confirmation of the default, plaintiff has failed to establish a prima facie case supporting an award for temporary total disability.
Accordingly, we reverse and set aside the judgment of the commissioner. The matter is remanded to the trial court for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
NOTES
[1] The EMG was performed by Dr. Mohnot at the New Orleans Headache and Neurology Clinic. These medical records were certified and were included in our review.