# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# WCA 21-824

DIANA HOWARD

VERSUS

RIO SOL NURSING HOME

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF AVOYELLES, NO. 19-00954
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

## SHARON DARVILLE WILSON

## JUDGE

**********

Court composed of Sylvia R. Cooks, Chief Judge, Jonathan W. Perry, and Sharon Darville Wilson, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

**Robert L. Beck, III**
**LUNEAU & BECK, L.L.C.**
**5208 Jackson St. Ext., Suite A**
**Alexandria, LA 71303**
**(318) 445-6581**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Diana Howard**

**Corey M. Meaux**
**PARKER & LANDRY, LLC**
**4023 Ambassador Caffery Parkway, Suite 320**
**Lafayette, LA 70503**
**(337) 362-1603**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Rio Sol Nursing Home**

**WILSON, Judge.**

In this workers' compensation case, Claimant, Diana Howard, appeals the judgment of the workers' compensation judge ruling in favor of her employer, Rio Sol Nursing Home (Rio Sol). The WCJ ruled that the reduction of Mrs. Howard's indemnity benefits was proper, denied her claim for temporary total disability benefits, and denied her request for penalties, attorney's fees and legal interest. For the following reasons, we affirm the judgment in part, reverse in part, and render judgment in favor of Mrs. Howard.

I.

## ISSUES

In this appeal we must decide:

(1)    whether the WCJ committed legal and/or manifest error by failing to find that Mrs. Howard was temporarily and totally disabled;

(2)    whether the WCJ committed legal and/or manifest error by failing to find that or even discuss whether Mrs. Howard proved by a preponderance of the evidence that she was unable to earn 90% or more of the wages she earned before her work accident;

(3)    whether the WCJ committed legal and/or manifest error by failing to find that or even discuss whether Mrs. Howard was entitled to SEB benefits pursuant to La.R.S. 23:1221(3)(c)(1); and

(4)    whether the WCJ committed legal and/or manifest error by failing to award Mrs. Howard a statutory penalty, an attorney fee, and legal interest on all amounts found to be due pursuant to either La.R.S. 23:1201(F) or (I).

## II.

## FACTS AND PROCEDURAL HISTORY

Mrs. Howard sustained an injury to her neck and back from an accident which occurred while working as an LPN with Rio Sol on June 3, 2012. At the time of the accident, Mrs. Howard's average weekly wage was $626.16, and she began receiving workers' compensation indemnity payments at the rate of $417.44 per week. Mrs. Howard began treating with Dr. Michael Dole for pain management following the accident.

On March 19, 2018, Mrs. Howard attended a Second Medical Opinion (SMO) with Dr. Stephen Wyble who stated he believed her to be at maximum medical improvement and capable of performing sedentary to light duty work in a low stress environment. On August 8, 2018, Mrs. Howard attended an Independent Medical Examination (IME) by Dr. Stephen Katz who also stated he believed her to be at maximum medical improvement and she should return to a sedentary level of work. In September 2018, Mrs. Howard began vocational rehabilitation with Scott Landry, the vocational rehabilitation counselor assigned to her workers' compensation claim. On October 12, 2018, and January 16, 2019, Mr. Landry notified Dr. Dole and counsel for Mrs. Howard of three available jobs he thought fit within Mrs. Howard's work restrictions indicated by Dr. Katz and Dr. Wyble.

On January 17, 2019, Rio Sol reduced Mrs. Howard's benefits to $150.78 per week based on the jobs found through vocational rehabilitation. In response, Mrs. Howard filed a 1008 Form on February 4, 2019, asking that her indemnity benefits be fully restored and requesting penalties, attorney's fees, and legal interest on any amounts found to be due. After numerous delays caused by the onset of the Covid-19 pandemic, trial was held on June 2, 2021. For reasons

2

assigned in an oral ruling on October 19, 2021, the WCJ ruled in favor of Rio Sol and found that the reduction of Mrs. Howard's benefits was proper and denied her request for temporary total disability benefits. The WCJ also denied Mrs. Howard's request for penalties, attorney's fees, and legal interest. The judgment was signed October 25, 2021. Mrs. Howard moved for a devolutive appeal, and it was granted on November 1, 2021.

III.

## STANDARD OF REVIEW

The determination of the WCJ regarding whether an employee has met their burden of proof that they are entitled to benefits is a factual determination. *Guffey v. Acadiana Computer Sys., Inc.*, 11-982 (La.App. 3 Cir. 12/14/11), 81 So.3d 214. When reviewing factual determinations of the WCJ, we apply the manifest error/clearly wrong standard of review. *Id.* Similarly, the determination of whether an employer was arbitrary and capricious is a question of fact, and it is subject to the same manifest error or clearly *wrong standard of review. Martin v. Doerle Food Servs., LLC*, 21-94 (La.App. 3 Cir. 6/2/21), 321 So.3d 475.

IV.

## LAW AND DISCUSSION

## TEMPORARY TOTAL DISABILITY BENEFITS

In her first assignment of error, Mrs. Howard asserts the WCJ committed legal and/or manifest error by failing to find that she was temporarily and totally disabled. Pursuant to La.R.S. 23:1221(1),

> compensation for temporary total disability shall be
> awarded only if the employee proves by clear and

> convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

To satisfy the burden of proving, by clear and convincing evidence, her physical inability to engage in employment, Mrs. Howard must introduce objective medical evidence of her disabling condition. *White v. WIS Int'l*, 17-132 (La.App. 3 Cir. 10/25/17), 230 So.3d 246. Thus, she must provide objective, expert testimony as to her medical condition, symptoms, pain, and treatment, in addition to personal testimony, to fulfill this standard. *Id.* The WCJ concluded that Mrs. Howard failed to prove her entitlement to TTD benefits as the only objective medical evidence introduced to support her claim was the medical records and deposition testimony of her pain management physician, Dr. Dole.

Mrs. Howard avers that, in finding she failed to meet her burden, the WCJ committed legal error by completely disregarding the medical records and deposition testimony of Dr. Dole relying on this court's decision in *Harris v. Langston Co., Inc.*, 94-1266 (La.App. 3 Cir. 4/5/95), 653 So.2d 789, *writ denied*, 95-1178 (La. 6/23/95), 656 So.2d 1020. In *Harris*, this court stated that "the existence of pain is not relevant to the question of temporary total disability benefits." *Id.* at 795. We disagree with Mrs. Howard's characterization.

The central question is whether Mrs. Howard proved she was unable to do any work, not whether she could do so without pain. The WCJ accurately made this distinction when evaluating the evidence submitted by Mrs. Howard. In his deposition testimony, Dr. Dole opined that he felt Mrs. Howard was unable to return

4

to work. This was due, in part, to his desire to have urine testing completed to determine her compliance with medication, which had been denied, before he could declare her at maximum medical improvement. While this evidence clearly showed that Mrs. Howard was experiencing pain, it was not clear that this pain prevented her from working. Moreover, the WCJ noted specifically that the record did not include any evidence that Mrs. Howard was still receiving any kind of treatment besides pain management.

While Dr. Dole declared that Mrs. Howard was unable to return to work, this testimony was contradicted by the SMO and IME physicians who concluded, based on their examinations, that she had reached maximum medical improvement and could return to sedentary to light duty work. Their position was further bolstered by Mrs. Howard's own testimony that she could perform household duties and managed to sit and participate in the trial without issue despite testifying that her pain was a nine out of ten. Accordingly, considering all the evidence, the WCJ found that Mrs. Howard failed to show by clear and convincing evidence she was unable to work. Thus, we find that the WCJ was not manifestly erroneous in denying Mrs. Howard's claim for TTD.

**SUPPLEMENTAL EARNINGS BENEFITS**

Mrs. Howard's second and third assignments of error concern the WCJ's ruling as it pertains to supplemental earnings benefits (SEB). Although Mrs. Howard is no longer eligible for TTD benefits, she may still qualify for SEB pursuant to La.R.S. 23:1221(3) if she is unable to earn 90% of her pre-accident wages. Mrs. Howard argues that the WCJ failed to even consider whether she was entitled to SEB, however, we disagree with this assessment. Although the WCJ never expressly used the phrase SEB, his evaluation of the reduction based on the

vocational rehabilitation counselor finding available jobs infers a consideration of SEB.

"The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52, 55 (La.1993). To recover SEB, Mrs. Howard first bears the burden of proving by a preponderance of the evidence that she is unable to earn 90% or more of the wages she earned before the accident. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. Once her burden is met, the burden then shifts to the employer to prove by a preponderance of the evidence that she is "physically able to perform a certain job and that the job was offered to [her] or that the job was available to [her] in [her] or the employer's community or reasonable geographic region[,]" in order to defeat the claim for SEB or establish earning capacity. *Id.* at 556.

In *Banks*, the Louisiana Supreme Court held that, an employer may discharge the burden of proving job availability by establishing, at a minimum, the following, by competent evidence:

> (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
> (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
> (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

*Id.* at 557. Mrs. Howard contends that Rio Sol failed to satisfy these requirements.

Mr. Landry identified three jobs as available for Mrs. Howard. Each of these positions was located in Alexandria, approximately forty miles away from Mansura where Mrs. Howard's home and Rio Sol are located. Mrs. Howard argues

that these positions fell outside Mrs. Howard's and Rio Sol's community or reasonable geographic region, and therefore, Rio Sol failed to meet its burden. Pursuant to La.Code Evid. art. 201, this court may take judicial notice of adjudicative facts, whether requested or not. These facts must be those not subject to reasonable dispute in that it is either "[g]enerally known within the territorial jurisdiction of the trial court," or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* Mrs. Howard submits that according to Google maps, the distances from her home to each position are 37.4, 44.1, and 38.4 miles one way. These positions are 37.2, 44.0, and 38.2 miles from Rio Sol.

The courts have not established a standard mileage radius when evaluating reasonable geographic region. Rather, this evaluation is made on a case-by-case basis depending on the specific facts of a case. "Whether a job is available in a reasonable geographic region may depend on such factors as the nature of the region, whether in a city or rural area, whether the claimant drives or has a license, and the availability of public transportation." *Maxie v. Brown Indus., Inc.*, 95-19, p. 7 (La.App. 3 Cir. 5/31/95), 657 So.2d 443, 447, *writ denied*, 95-1630 (La. 10/6/95), 661 So.2d 469.

Rio Sol contends that driving the daily 74.8 to 88 miles round trip to Alexandria is reasonable in this case because Mansura is a rural area, and it is expected that someone would travel to Alexandria which has a larger population and more job opportunities. They also note that Mrs. Howard makes this trip monthly to visit Dr. Dole, and no doctor has ever restricted her from driving. While these facts are true, we must consider the totality of the circumstances.

Although Mrs. Howard travels to Alexandria for doctor's visits, these trips are monthly as opposed to the daily trip she would have to make for work. Additionally, Mrs. Howard testified that although she can drive short distances around her home, her husband drives her when she goes to Alexandria as these longer trips take a lot out of her and cause her pain level to increase. Moreover, Mrs. Howard is currently taking several medications daily which combined cause her drowsiness and insomnia. Extrapolating from the reduced benefit rate of $150.78 per week, Mrs. Howard's benefits were reduced based on a $10.00 per hour, forty hour per week position. Taking judicial notice of the mileage, Mrs. Howard would be expected to drive between 374 and 440 miles round trip on a weekly basis for a gross weekly wage of $400.00 per week plus $150.78 in SEB.

It is clearly unreasonable to expect Mrs. Howard to travel such distances given her chronic pain and medication use. Taking these facts into consideration, we find that Rio Sol failed to meet its burden of proving the existence of a suitable job within Mrs. Howard's or Rio Sol's community or geographic region. Since Rio Sol has failed to meet its burden to defeat the claim for SEB or establish earning capacity, Mrs. Howard is entitled to SEB based on a zero-earning capacity. *See Sharp v. Landscape Mgmt. Servs.*, 11-340 (La.App. 3 Cir. 10/5/11), 74 So.3d 1239, *writ denied*, 11-2462 (La. 1/20/12), 78 So.3d 143. Thus, we hold that the WCJ manifestly erred in ruling that the reduction of benefits to $150.78 per week was proper, and we now render judgment in favor of Mrs. Howard awarding her SEB as of January 17, 2019, based on a zero-earning capacity.

**PENALTIES**

In her final assignment of error, Mrs. Howard asserts the WCJ erred in denying her claim for statutory penalties and attorney's fees. Mrs. Howard argues

8

she is entitled to an award of penalties and attorney's fees under La.R.S. 23: 1201(I). La.R.S. 23:1201 (I) provides,

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:1892(C) shall be applicable to claims arising under this Chapter.

"Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, pp. 8-9 (La. 12/1/98), 721 So.2d 885, 890. "In determining whether an employer's actions are arbitrary and capricious, the crucial inquiry is whether the employer can articulate an objective reason for terminating benefits at the time of the termination." *Doyal v. Vernon Par. Sch. Bd.*, 06-1088, p. 10 (La.App. 3 Cir. 2/7/07), 950 So.2d 902, 909, *writ denied*, 07-832 (La. 6/15/07), 958 So.2d 1190. "Where termination of worker's compensation is based on competent medical reports or evidence, it is not arbitrary and capricious." *Guillory v. City of Lake Charles*, 614 So.2d 165, 170 (La.App.3 Cir.), *writ denied*, 616 So.2d 700 (La.1993).

Rio Sol reduced Mrs. Howard's benefits in reliance on the SMO and IME reports of Dr. Wyble and Dr. Katz in conjunction with the identification of available jobs by the vocational rehabilitation counselor. While we ultimately conclude that the jobs submitted by Mr. Landry were not available in Mrs. Howard's reasonable geographic region, we cannot say that Rio Sol was unreasonable in

relying on the IME and SMO reports along with the findings of its vocational rehabilitation counselor.

Additionally, Mrs. Howard requests penalties under La.R.S. 23:1201(F). A panel of this court recently explained,

> Louisiana Revised Statutes 23:1201(F) provides for the assessment of penalties and attorney fees against an employer for failure to timely pay workers' compensation benefits. Penalties and attorney fees will not be assessed against an employer if the claim is reasonably controverted or nonpayment is due to circumstances beyond the employer's control. *Id.* To reasonably controvert a claim, an employer must be "engaged in a nonfrivolous legal dispute or [possess] factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas–LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890.

*Ortega v. Cantu Services, Inc.*, 19-202, p. 8 (La.App. 3 Cir. 10/23/19), 283 So.3d 1024, 1031. As previously discussed, Rio Sol reduced benefits in accordance with the SMO and IME reports along with the findings of its vocation rehabilitation counselor for Mrs. Howard's claim. This reliance was reasonable and therefore, Rio Sol reasonably controverted the claim. As such, we find that the WCJ did not err in denying penalties and attorney's fees.

V.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the WCJ denying Mrs. Howard's claim for TTD benefits. We also affirm the denial of penalties, attorney's fees and legal interest. However, we reverse the ruling finding the reduction of Mrs. Howard's benefits was proper and render judgment awarding Mrs.

10

Howard SEBs at a zero-earning capacity rate as of January 17, 2019.  The costs of this appeal are assessed to defendant, Rio Sol Nursing Home.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**